UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DALE JORDAN, ) | | |
|     Plaintiff, ) | | |
| ) | | |
| vs. ) | | 1:07-cv-0893-LJM-DML |
| ) | | |
| CENTRAL RESTAURANT PRODUCTS, ) | | |
| a/k/a R2D2, INC., ) | | |
|     Defendant. ) | | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant's, Central Restaurant Products a/k/a/ R2D2, Inc. ("Central" or "Defendant"), Motion for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure ("Rule 56(c)"). Plaintiff, Dale Jordan ("Jordan" or "Plaintiff"), initiated this action under Title VII, 42 U.S.C. §§ 2000e *et seq*, and 42 U.S.C. § 1981, alleging that Central discriminated against him on the basis of race and retaliated against him for filing two complaints with the Equal Employment Opportunity Commission ("EEOC"). The Court has fully considered the parties' arguments and, for the reasons discussed below, **GRANTS** Defendant's Motion for Summary Judgment.

**I. BACKGROUND**

Central distributes restaurant supply products used in the food service industry. On October 1, 1997, Central hired Jordan for a Warehouse Associate position. Def.'s Ex. 4, ¶ 3. The primary function of Jordan's position, according to the job description, was "Movement and handling of products with taking caring (sic) to see that all products are delivered to the customer in factory fresh

condition." Def.'s Ex. 3. Additional duties included: to follow all procedures and policies at all times; to interact daily with others; to work scheduled shifts; to complete special projects as assigned; and "other duties as assigned." *Id.* Warehouse associates rotated through various warehouse duties, including receiving, locating, picking, packing small packages, packing truck orders, cycle counts, and special projects. Def.'s Exs. 4, ¶ 6; 6. Seniority does not play a part in the assignment of daily tasks. Def.'s Ex. 4, ¶ 6. Additionally, Central requires all of its employees, including management, to take turns cleaning the break room. Def.'s Exs. 4, ¶ 3; 7.

As part of its training program, Central used employees with above-average productivity to train other associates because "those who are highly productive will be better equipped to train new employees on how to be highly productive employees. . . . [T]hose who perform less well[] are less capable of training others to become high performers." Def.'s Ex. 4 ,¶ 9. Although Central never selected Jordan to train other employees, Central trained Jordan on all the equipment in the warehouse. Def.'s Exs. 4, ¶ 9; 15.

As part of his employment with Central, Jordan received several evaluations from management regarding various aspects of his job performance. Pl.'s Ex. A. In its performance evaluations, Central rates its employees on a scale from one to six as follows: level one states "Does not meet job requirements" and level six states "Far exceeds job requirements." Pl.'s Ex. A. In general, Jordan received a three or four rating, although some evaluations were higher and some were lower. *Id.* Central also tabulated each employee's productivity and compared it to the average productivity of all employees. Def.'s Ex. 8. Jordan's productivity rating nearly always failed to meet or exceed the average productivity rating of his coworkers. *Id.*

Jordan received several pay raises every year during his tenure with Central. Jordan started

at $8.50 per hour and finished at $16.55 per hour. The largest raise he received was an 8.51% increase and the smallest raise was a 3.19% increase. According to Bret Beegle ("Beegle"), Central's Chief Operating Officer, the amount of a pay raise directly correlates to productivity. Def.'s Ex. 4, ¶ 4. The employees that received higher pay than Jordan were more productive. Def.'s Exs. 9-10. In fact, Jordan was one of only two employees with below-average production levels. Def.'s Ex. 9.

On February 9, 2006, Jordan filed a charge of discrimination with the EEOC in which he alleged that Central treated him unfairly with respect to work assignments due to his race. Pl.'s Ex. H. On June 26, 2006, Jordan complained to Central's management that he was not treated fairly in the warehouse, specifically by Bill Teets ("Teets"), a supervisor. Def.'s Ex. 11. Jordan also argued that because he had seniority, he should get preference over his coworkers. *Id.* On November 2, 2006, Jordan reported to Steve Kruk ("Kruk"), Director of Operations, that Teets snapped a camera in Jordan's face without his consent (the "camera incident"). Def.'s Ex. 13. Kruk instructed Jordan that he would discuss the incident with Teets and that it would not happen again. *Id.*

On November 13, 2006, Beegle held a counseling session with Jordan, with Kruk as a witness, because Jordan had argued that it was not in his job description to clean the company break room. Def's Exs. 4, ¶ 5; 5. Beegle instructed Jordan that all employees, including management, had a responsibility to clean the break room. *Id.* That same day, Jordan filed a second charge of discrimination with the EEOC. Pl.'s Ex. I. In that charge, Jordan reasserted his complaint that Central improperly assigned him tasks due to his race. *Id.* Additionally, he cited the camera incident and alleged that he had been "singled out, harassed and subjected to retaliation[.]" *Id.* Jordan resigned his employment with Central on April 6, 2007.

3

## II. **STANDARD**

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56 (c) ("Rule 56(c)"), which provides in relevant part:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III.  DISCUSSION

Jordan asserts the following claims: (1) unlawful discrimination on the basis of race; and (2) retaliation for engaging in a protected activity. The Court discusses these claims in turn.

### A.  UNLAWFUL RACE DISCRIMINATION[1]

With no direct evidence of unlawful discrimination, these claims are properly analyzed under the familiar *McDonnell Douglas* burden shifting approach. *See McDonnell Douglas Corp. v. Green*,

---

[1] Jordan asserts these claims under both Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. The Court discusses these claims together in this section because the same analysis applies to both claims. *See Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 176 (7th Cir. 1996).

441 U.S. 792 (1973). Under *McDonnell Douglas*, Jordan must first establish a *prima facie* case of race discrimination. *See Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 784 (7th Cir. 2004). To do so, Jordan must establish that: "(1) he was a member of protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) other similarly situated employees who were not members of his protected class were treated more favorably." *Id.* (citing *Wells v. Unisource Worldwide, Inc.*, 289 F. 3d 1001, 1006 (7th Cir. 2002)). If Jordan establishes a *prima facie* case, the burden of production shifts to Central to articulate a legitimate, nondiscriminatory reason for its employment decision. *Id.* Jordan must then demonstrate that Central's articulated reason is merely a "pretext" for race discrimination. *Id.* Throughout this burden shifting analysis, Jordan retains the ultimate burden of proving that Central intentionally discriminated against him. *See Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003).

Jordan points the Court to what he considers three examples of Central's discriminatory conduct: (1) inadequate pay increases; (2) to not let Jordan train other employees; and (3) to assign Jordan the least desirable tasks in the job rotation. However, Jordan has failed to identify other similarly situated employees who were not members of his protected class that Central treated more favorably. In response to Central's Motion for Summary Judgment, Jordan designated several hundred pages of company documents. Jordan merely referred the Court to these documents and argued that the documents provide evidence that Central treated white employees more favorable than Jordan. He did not specifically identify which white employees were similarly situated; how those employees were similarly situated; and how Central treated those specific employees more favorably.

"Employees are similarly situated if they are directly comparable in all material aspects." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). Plaintiff has not identified any white employees that are "directly comparable in all material aspects." *Id.* Indeed, Jordan has not specifically compared himself to any of the other warehouse workers. Rather, he simply directs the court to several hundred pages of employment records and asks the Court to find those employees who are directly comparable in all material aspects to Jordan. But it is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment. *See Bombard*, 92 F.3d at 562. While it is the Court's responsibility to determine if genuine issues of material fact exist, "[t]he parties . . . bear a concomitant burden to identify the evidence that will facilitate this assessment." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). *See also United States v. Dunkel*, 927 F.3d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs." (*per curiam*).

The Court concludes that Jordan has not established that "other similarly situated employees who were not members of his protected class were treated more favorably." *Davis*, 368 F.3d at 784. Therefore, he cannot establish a prima facie case of race discrimination. *Id.* Central's Motion for Summary Judgment for Jordan's race discrimination claims is **GRANTED**.

### B. RETALIATION CLAIM

For his retaliation claim, Jordan proceeds under the indirect method of proof, where he must show that: (1) he engaged in a statutorily protected activity; (2) he performed his job according to Central's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected

activity. *See Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1031 (7th Cir. 2004). As discussed above, Jordan has not directed the Court to any evidence that shows he was treated less favorably than similarly situated employees. As a result, he cannot establish a prima facie case of retaliation. *Id.* Central's Motion for Summary Judgment for Jordan's retaliation claim is **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, Defendant's, Central Restaurant Products a/k/a/ R2D2, Inc., Motion for Summary Judgment is **GRANTED**. Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED this 7th day of November, 2008.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Gail M. Flatow
gail@flatowlaw.com

Edward R. Hannon
HANNON KOLAS & CENTERS
ehannon@hkclaw.net

Judith E. Overturf
BLYTHE & OST
joverturf@fleetmax.com